IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN T. WEAVER AND TAKAKO S. WEAVER, <br><br> Plaintiffs, <br><br> vs. <br><br> A-AMERICAN STORAGE MANAGEMENT CO., INC.; ET AL., <br><br> Defendants. <br> _____ | ) CIVIL NO.  10-00600 JMS-KSC <br> ) <br> ) ORDER DENYING DEFENDANT <br> ) A-AMERICAN STORAGE <br> ) MANAGEMENT CO., INC.'S <br> ) MOTION TO DISMISS COUNTS II <br> ) AND III OF THE FIRST AMENDED <br> ) COMPLAINT <br> ) <br> ) <br> ) |

**ORDER DENYING DEFENDANT A-AMERICAN STORAGE MANAGEMENT CO., INC.'S MOTION TO DISMISS COUNTS II AND III OF THE FIRST AMENDED COMPLAINT**

## I. INTRODUCTION

On October 13, 2010, Plaintiffs John T. Weaver and Takako S. Weaver ("Plaintiffs") filed a First Amended Complaint ("FAC") in the Circuit Court of the First Circuit, State of Hawaii, claiming Defendant A-American Storage Management Co., Inc. ("Defendant") violated federal and state employment discrimination laws and committed other violations of state common law.  Defendant removed the action to this court and has now filed a Motion to Dismiss Counts II and III, which allege violations of Hawaii Revised Statutes ("HRS") § 378-2 and intentional infliction of emotional distress ("IIED").  The

other counts are not at issue in this Motion.

Defendant asserts that Count II is defective, either because it does not plead exhaustion of state administrative remedies, or because it is time-barred as Plaintiffs filed their initial complaint three days after the ninety-day limitations period after receiving a state right-to-sue notice as set forth in HRS § 368-12. As to Count III, Defendant contends that the FAC fails to plead facts establishing all elements of IIED.

For the reasons set forth, the court DENIES the Motion as to Count II without prejudice to raising the statute of limitations issue in a summary judgment motion, and otherwise DENIES the Motion as to Count III.

## II.  BACKGROUND

A.    **Factual Background**

The court assumes the FAC's factual allegations are true for purposes of this Motion. *See, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).

Plaintiff John Weaver ("Weaver") is an African-American resident of Honolulu. FAC ¶¶ 1, 7. Weaver's spouse is co-Plaintiff Takako Weaver ("Takako"). *Id.* ¶ 2. On October 1, 2008, Weaver applied for the position of Hawaii Area Manager with Defendant. Weaver had served for several years as a

regional and operations manager for Hawaii storage companies, and had self

storage experience dating back to 1990.  *Id.* ¶¶ 8, 10-12.

On October 14, 2008, Weaver flew to Los Angeles, California (at

Defendant's expense) for an interview.  He was met at Los Angeles International

Airport by James Hanrahan, Defendant's Senior Vice-President; and Edmund

Olsen, Defendant's founder and Chief Executive Officer.  *Id.* ¶¶ 15-16.  "When

[Weaver] approached Mr. Hanrahan and Mr. Olsen, Mr. Olsen's facial expression

and body language changed negatively the moment Mr. Olsen realized that

[Weaver] was African American."  *Id.* ¶ 16.

While in the airport parking structure, Hanrahan told Weaver that

Olsen did not think Weaver would be accepted by Hawaii managers because

Weaver was not "local" enough.  *Id.* ¶ 19.  Similarly, Craig Olsen (Defendant's

President) later told Weaver that Craig Olsen's father (Edmund Olsen) was

concerned the Weaver was "not local enough."  *Id.* ¶ 24.

After the interview process, Weaver was offered the Hawaii Area

Manager job at a salary of $80,000 per year, plus a company automobile and

company apartment as part of the employment package.  *Id.* ¶ 27.  Weaver

expressed certain concerns about fair treatment, and Craig Olsen "responded by

assuring and promising [Weaver] that he would be treated fairly and terminated

only for cause." *Id.* ¶ 34.  Weaver then accepted the position of Hawaii Area Manager, and was placed on the payroll immediately.  *Id.* ¶¶ 35, 41.

Weaver returned to Hawaii and began duties with Defendant.  *Id.* ¶¶ 42-44, 47, 49.  On or about November 5, 2008, Defendant leased Weaver the company apartment.  Weaver received use of the company Ford F150 truck on November 7, 2008.  Weaver then returned the vehicle he had been leasing for the previous two years to the leasing company, and did not renew the month-to-month lease on his current apartment.  *Id.* ¶¶ 48, 50-52 .

Only five days later, however, Hanrahan terminated Weaver's employment.  *Id.* ¶¶ 60-61.  Weaver alleges he was terminated because he was "not local" and because he was African American.  *Id.* ¶¶ 74, 76.  Hanrahan took Weaver's company credit card, cellular telephone, laptop computer, and keys to the company vehicle and apartment.  *Id.* ¶ 60.  Hanrahan drove Weaver to the company apartment in Pearl City, and told Weaver that Edmund Olsen told Hanrahan to terminate Weaver.  Hanrahan then told Weaver to remove everything from the company apartment.  Weaver told Hanrahan he had no place to store his belongings because he already terminated the lease on his previous apartment. Hanrahan refused to allow Weaver to use a locker at Defendant's facility and also refused to allow Weaver to pay for rental of a locker.  *Id.* ¶¶ 61-62, 65-67.

4

Weaver was forced to remove his belongings to a truck. "[E]mployees, agents, and/or representatives of Defendant" instructed the truck driver not to assist Weaver. *Id.* ¶ 68. The driver sat in the air-conditioned truck for four and a half hours, while Weaver loaded the truck. *Id.* The truck driver then took Weaver to his old apartment in Hawaii Kai and Weaver unloaded his belongings outside. *Id.* ¶ 69. He was left with "no job, no car and no place to live." *Id.* ¶ 70. Because of his termination, Weaver's marriage to Takako "became strained to the point where they were temporarily separated from each other." *Id.* ¶ 72. Weaver was homeless and living in a car during his separation from his wife. *Id.* ¶ 73.

The FAC further alleges that Defendant continued to harm Weaver by "spreading untrue rumors" to potential employers when Weaver attempted to obtain employment elsewhere. Weaver was told by prospective employers that he was terminated by Defendant because of poor performance. *Id.* ¶¶ 80-81.

As for exhaustion of remedies, the FAC alleges that "Plaintiff [Weaver] completed the U.S. Equal [Employment] Opportunity Commission (hereinafter "EEOC") questionnaire and timely submitted it to the EEOC. Plaintiff stated with particularity the incidents and reason why he felt discriminated against by Defendants [sic]." *Id.* ¶ 83. "Plaintiff was given a Notice of Right to Sue letter

from the EEOC relating to this case dated February 4, 2010.  This lawsuit was

timely filed within the time frame outlined in the February 4, 2010 Notice of Right

to Sue letter from the EEOC."  *Id.* ¶¶ 84-85.  The record indeed reflects that the

EEOC issued a Notice of Right to Sue, dated February 4, 2010.  *See* Def.'s Ex. C.

The FAC does not mention a separate right-to-sue letter from the Hawaii Civil

Rights Commission ("HCRC"), although Defendant points out that Weaver earlier

had received an HCRC letter dated January 22, 2010.  *See* Def.'s Ex. A.

The HCRC letter states in part that "your case has been closed

effective January 22, 2010 . . . .  You have the right to file a private lawsuit against

Respondent in the State Circuit Court within ninety (90) days after receipt of this

notice[.]"  *Id.*  Similarly, the EEOC Notice, mailed on February 4, 2010, states in

pertinent part:

> This is your Notice of Right to Sue, issued under Title
> VII. . . .  It has been issued at your request.  Your lawsuit
> under Title VII. . . **must be filed in a federal or state
> court <u>WITHIN 90 DAYS</u> of your receipt of this
> notice**; or your right to sue based on this charge will be
> lost.  (The time limit for filing suit based on a claim
> under state law may be different.)

Def.'s Ex. C (emphasis in original).

## B.    Procedural Background

The Motion challenges the timeliness of certain aspects of Plaintiffs'

claim under HRS § 378-2.  The court sets forth relevant dates in the following time line:

| | |
|---|---|
| Nov. 12, 2008 | Plaintiff terminated. |
| May 12, 2009 | Letter to Defendant from HCRC indicating a complaint had been filed.  Def.'s Ex. E.  Given this letter, the administrative complaint had necessarily been timely filed within 180 days of the alleged discrimination as required by HRS § 368-11(c). |
| Jan. 13, 2010 | Letter from Plaintiffs' counsel Michael Green (dated Jan. 13, 2009 [sic 2010]) to the HCRC requesting a right-to-sue letter.  Def.'s Ex. D. |
| Jan. 22, 2010 | HCRC issues a right-to-sue letter.  Def.'s Ex. A. |
| Jan. 25, 2010 | Plaintiffs' counsel receives HCRC letter.  *Id.* at 2. |
| Feb. 4, 2010 | EEOC mails separate right-to-sue letter.  Def.'s Ex. C. |
| Apr. 29, 2010 | Original Complaint filed in state court (93 days after January 25th, and 84 days after February 4th), asserting both federal and state statutory discrimination claims.  Doc. 1, Ex. A.  (The Complaint was not served until Sept. 16, 2010. Mot. at 2.). |
| Oct. 13, 2010 | FAC filed in state court.  Def.'s Ex. B. |
| Oct. 14, 2010 | Action removed to this court.  Doc. 1. |

Defendant then filed this Motion on October 21, 2010.  Plaintiffs filed an Opposition on December 13, 2010, and Defendant filed its Reply on December

20, 2010.  The Motion was heard on January 10, 2011.

### III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions."  *Iqbal*, 129 S. Ct. at 1949.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 1949 (citing *Twombly*, 550 U.S. at 556).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief.  *Id.* at 1950.

If a court considers matters outside the pleadings when faced with a

8

Rule 12(b)(6) or 12(c) motion, the motion "must be treated as one for summary

judgment under Rule 56." Fed. R. Civ. P. 12(d).  In such a situation, "[a]ll parties

must be given a reasonable opportunity to present all the material that is pertinent

to the motion." *Id.*  However, a court may "consider certain materials -- documents

attached to the complaint, documents incorporated by reference in the complaint,

or matters of judicial notice -- without converting the motion to dismiss into a

motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th

Cir. 2003).  "A court may consider evidence on which the complaint 'necessarily

relies' if:  (1) the complaint refers to the document; (2) the document is central to

the plaintiff's claim; and (3) no party questions the authenticity of the copy

attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.

2006) (citations omitted).

A claim may be dismissed under Rule 12 as "barred by the applicable

statute of limitations only when 'the running of the statute is apparent on the face

of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592

F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d

992, 997 (9th Cir. 2006)).  Such motion should be granted "only if the assertions of

the complaint, read with the required liberality, would not permit the plaintiff to

prove that the statute was tolled." *Morales v. City of L.A.*, 214 F.3d 1151, 1153

(9th Cir. 2000).  Under *Cervantes v. City of San Diego*, 5 F.3d 1273 (9th Cir.

1993), a plaintiff need not specifically raise "equitable tolling" in the complaint for

the doctrine to apply.  Rather, "the sole issue is whether the complaint . . .

adequately alleges facts showing the *potential* applicability of the equitable tolling

doctrine."  *Id.* at 1277 (emphasis in original).  That is, the court assesses whether

the complaint plausibly alleges facts indicating equitable tolling.  *Iqbal*, 129 S. Ct.

at 1949; *Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp. 2d 895, 907 (C.D. Cal.

2009) (reasoning that "the FAC has not stated facts plausibly indicating any basis

for tolling the statute of limitations" but allowing further amendment).

> "[D]etermining the applicability of equitable tolling . . . ordinarily

requires reference to matters outside the pleadings, and is not generally amenable

to resolution on a Rule 12(b)(6) motion, where review is limited to the complaint

alone."  *Cervantes*, 5 F.3d at 1276 (citations omitted).  "[O]nly in the rare case

[can] the [equitable tolling] inquiry proceed at the pleading stage."  *Daviton v.

Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1140 (9th Cir. 2001) (en banc)

(interpreting California law).

## IV.  DISCUSSION

Defendant asserts that Count II (unlawful discriminatory practices

under HRS § 378-2) is defective, either because it does not plead exhaustion of

state administrative remedies, or because it is time-barred.  Defendant also

contends that Count III alleging IIED fails to state a claim because it does not

allege facts fulfilling all the elements of IIED.

## A.        Exhaustion of Administrative Remedies -- HRS § 378-2

Although Defendant first argues that the FAC is defective for failure

to allege exhaustion of state administration remedies under HRS § 368-12,[1] the

parties agreed at the hearing that the court need not reach this pleading issue in the

current situation.

Here, the FAC alleges exhaustion of federal remedies under Title VII

with the EEOC, and the corresponding receipt of a right-to-sue notice from the

EEOC.  The FAC, however, does not specifically allege exhaustion of state

remedies.  Nevertheless, Hawaii is a "deferral state" and has a work sharing

agreement between the EEOC and HCRC where "filing a complaint with one

agency constitutes a simultaneous filing with the other."  *Kaulia v. Cnty. of Maui,*

*Dep't of Pub. Works & Waste Mgmt.*, 504 F.Supp. 2d 969, 985 & n.20 (D. Haw.

2007).  Thus, because the FAC alleges that Weaver filed an EEOC complaint, it

necessarily indicates that Weaver also filed a charge under state law.  Whether the

---

[1] *See Ross v. Stouffer Hotel Co.*, 76 Haw. 454, 460, 879 P.2d 1037, 1043 (1994) (agreeing that "the timely filing of an administrative complaint . . . was a precondition to a civil suit under HRS § 378-2").

FAC must also allege that Weaver actually *received* a separate *HCRC* notice of

right to sue is the question the court need not reach -- Defendant has raised a

defense of failure to timely exhaust the state-law claim, and in so doing provides

the court with actual proof that Weaver did in fact obtain a notice of right-to-sue

from the HCRC.  *See* Def.'s Ex. A.  Under these circumstances, such an allegation

in the FAC (or in a second amended complaint) would serve no purpose -- and the

Defendant agreed during the January 10, 2011 hearing that the court need not reach

this issue.  In effect, all parties agree that the § 378-2 claim *was* exhausted; the

unresolved question is whether the claim is barred by the applicable statute of

limitations after being exhausted.

## B.      Statute of Limitations -- Equitable Tolling

It is undisputed that Plaintiffs filed their initial complaint in state court

on April 29, 2010 -- three days after expiration of the ninety-day limitations period

in HRS § 368-12.  Section 368-12 provides:  "[w]ithin ninety days after receipt of

a notice of right to sue, the complainant may bring a civil action under this

chapter."  (Title VII provides a similar ninety-day period within which to file a

federal action after receipt of an EEOC right-to-sue letter.  *See* 42 U.S.C. § 2000e-

5(f)(1).)  The record reflects (upon consideration of documents attached to

Defendant's Motion and Reply) that Plaintiffs' counsel received the state HCRC

12

notice on January 25, 2010, and did not file suit until 93 days later.[2]

The suit, however, was filed within ninety days of the EEOC notice of right to sue, which was dated February 4, 2010 -- thirteen days after the HCRC notice was mailed.  The suit (and the Title VII claim) was timely as measured from the EEOC notice, but the § 378-2 claim is three days late when measured from the earlier HCRC notice.  *See, e.g.*, *Salgado v. Atl. Richfield Co.*, 823 F.2d 1322, 1326 (9th Cir. 1987) ("Under the FEHA [California's equivalent to the Hawaii statutory employment discrimination law], the right to sue accrues from the time a party receives a right-to-sue notice from the [California] Department [of Fair Employment and Housing], not the EEOC.").  Assuming the same rule would apply for a § 378-2 claim under Hawaii law, Defendant argues that the court should dismiss Count II as time-barred.

In opposition, Plaintiffs do not argue that the Hawaii ninety-day period is measured from the date of the EEOC letter.  They again point out,

---

[2] Defendant asks the court to take judicial notice of all the documents it attaches to its moving and reply memoranda.  These documents include not only the right-to-sue notices, but also letters from counsel to the HCRC and from the HCRC to Defendant.  Some of the documents may be amenable to judicial notice (such as the right to sue notices).  *See, e.g.*, *Henderson v. Alexander & Baldwin, Inc.*, 2007 WL 3332067, at *1 n.1 (D. Haw. Nov. 7, 2007) (taking judicial notice of charge of discrimination attached to complaint); *see also Cunningham v. Litton Indus.*, 413 F.2d 887, 889 n.2 (9th Cir. 1969) (taking judicial notice of EEOC proceedings).  Even considering the exhibits, however, the court deems the matter more suited for resolution at a summary judgment stage.

13

however, that Hawaii is a work sharing jurisdiction where claims filed with the EEOC are deemed dual-filed with the HCRC.  In such situations, "equitable tolling" may apply while remedies are being exhausted with the EEOC.  Plaintiffs rely on *Salgado*, wherein the Ninth Circuit applying California law tolled a state-law statute of limitations that is similar to § 368-11 while the EEOC was completing its investigation where the state agency in a work-sharing jurisdiction had deferred to the EEOC.  *Salgado*, 823 F.2d at 1326-27.  *Salgado* reasoned that "[a]s a general rule, a state statute of limitations is tolled when the plaintiff is pursuing an administrative remedy for the same alleged wrongdoing."  *Id.* at 1326.

California courts agreed with *Salgado*, and the equitable-tolling rule was later codified by the California Legislature.  *See McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 109-10, 194 P.3d 1026, 1038 (Cal. 2008) (explaining background of the tolling doctrine, and that it "advances administrative efficiency and does not disadvantage the defendant; because tolling continues only so long as the federal administrative process continues, defendants are not confronted with stale claims or deprived of the opportunity to preserve appropriate evidence").

Defendant attempts to distinguish *Salgado* on its facts.  In *Salgado*, the plaintiff Salgado filed his initial complaint with the EEOC -- as Weaver alleges

14

he did here -- but, under the work sharing agreement, the California Department of Employment and Fair Housing issued a right-to sue notice within a week without investigating and informed him that the EEOC was handling the matter. *Id.* That is, the state agency completely deferred to the EEOC and Salgado was justified in waiting until the EEOC's investigation was finished before filing suit (on both the state and federal causes of action). "The administrative proceedings of the EEOC replaced those of the state agency. Salgado had to await the outcome of the EEOC's processing of his claims in order to receive the full benefit of an investigation[.]" *Id.*

Defendant cites to a letter from the HCRC to Defendant that appears to indicate that the HCRC -- not the EEOC -- took the lead. *See* Def.'s Ex. E. Defendant also points to a letter from Plaintiffs' counsel to the HCRC requesting the right-to-sue letter (indicating counsel was not awaiting the results of any administrative investigation from either the HCRC or EEOC). *See* Def.'s Ex. D. Defendant also argues that Plaintiffs still had "ample time" (about 77 days) within which to file a suit with a timely § 378-2 state-law claim even after receiving the EEOC letter (indicating a lack of diligence on Plaintiffs' part). These

15

circumstances appear to be different from those analyzed in *Salgado*.[3]

On the current record, however, the court should not resolve this issue by a motion to dismiss.  *See Cervantes*, 5 F.3d at 1276 ("determining the applicability of equitable tolling . . . ordinarily requires reference to matters outside the pleadings, and is not generally amenable to resolution on a Rule 12(b)(6) motion, where review is limited to the complaint alone."); *Daviton*, 241 F.3d at 1140 ("[O]nly in the rare case [can] the [equitable tolling] inquiry proceed at the pleading stage.").  The factual circumstances regarding the administrative proceedings conducted on Weaver's complaint are subject to interpretation. Several types of questions are important.  For example, is it clear that the HCRC took the lead?  Did the EEOC conduct its own parallel investigation?  Did Weaver or his counsel have reason to wait for the EEOC letter?  Which agency did Weaver file with initially?  What kind of administrative claim did he make?  (*e.g.*, did he "dual file," or did he file first with the EEOC as alleged in the FAC?)  What prejudice would there be to Defendant?  Was there "due diligence" by Plaintiffs?

---

[3] Defendant likens Weaver's situation to that in *Miles v. County of Los Angeles Fire Department*, 2003 WL 21213269 (Cal. App. May 27, 2003), where a California appellate court distinguished *Salgado* and similar cases and found no equitable tolling.  In *Miles*, the state agency took the lead and did not issue a state notice for a year; there was no reason for the plaintiff to wait for an EEOC letter.  *Id.* at **5-6.  Although its reasoning might be sound, however, *Miles* is listed by California courts as "nonpublished/noncitable."  In any event, even if the court were inclined to follow *Miles*, its applicability is not clear on the current record.

(Plaintiffs have not been given an opportunity to file a declaration as to why the initial complaint was not filed within ninety days of the HCRC letter). These types of factual questions are not undisputed "on the face" of the FAC (even taking judicial notice of Defendant's exhibits).

A motion to dismiss based on the running of the statute of limitations "can be granted only if the assertions of the complaint . . . would not permit the plaintiff to prove that the statute was tolled." *Cervantes*, 5 F.3d at 1275. "The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to *offer* evidence[.]" *Id.* at 1274 (emphasis in original). "Indeed, . . . equitable tolling *requires* a practical inquiry. At a minimum, determining the applicability of equitable tolling necessitates resort to the *specific* circumstances of the prior claim." *Id.* at 1276 (emphasis in original). Dismissals at a motion to dismiss stage despite a claim of equitable tolling are "unusual" and occur where "some fact, evident from the face of the complaint, supported the conclusion that the plaintiff could not prevail, as a matter of law, on the equitable tolling issue." *Id.*; *see also Daviton*, 241 F.3d at 1140 (reiterating analysis from *Cervantes*).

Defendant may have a valid argument that Plaintiffs are not entitled to equitably toll -- even for three days -- the ninety-day period in § 368-12. If Plaintiffs truly were not diligent and had no reasonable basis to wait for the EEOC

17

letter, equitable tolling might not apply.  Nevertheless, on the current record, the court finds that this is an issue not suitable for decision at this stage of the proceedings.  Accordingly, the court DENIES the Motion without prejudice to Defendant raising the statute of limitations issue if appropriate in a summary judgment motion.

**C.    Intentional Infliction of Emotional Distress**

Lastly, Defendant argues that the FAC fails to plead facts establishing all elements of IIED.

Under Hawaii law, the elements of IIED are: "(1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another." *Enoka v. AIG Haw. Ins. Co., Inc.*, 109 Haw. 537, 559, 128 P.3d 850, 872 (2006). Extreme emotional distress constitutes "mental suffering, mental anguish, nervous shock, and other highly unpleasant mental reactions." *Id.* (internal quotations omitted).  *See also Hac v. Univ. of Hawaii*, 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003).

Defendant contends that, even assuming the allegations of the FAC as true, the circumstances are not "outrageous" as a matter of law.  Defendant argues that it is not "outrageous" to evict Weaver from company housing to which he is

18

not entitled.  *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 817 (Tex. 2005).

Nor is it necessarily "outrageous" to give intentionally bad employment references.

*See Abbott v. Crown Motor Co.*, 348 F.3d 537, 545 (6th Cir. 2003) (applying Ohio

law).  Nor does IIED necessarily follow from intentional employment

discrimination.  *Ross*, 879 P.2d at 1048.

       Here, however, *all* of these actions are alleged.  Intentionally

discriminating against an employee based on race, terminating him after only a few

weeks in violation of federal and state law, evicting him, taking his residence and

car, forcing him to remove his belongings to the street, *and* later giving false

information to prospective employers could constitute "outrageous" conduct for

purposes of IIED.  The court must assume the allegations of the FAC are true.

Doing so, the court finds the FAC sufficiently states "outrageous" conduct for

purposes of IIED.

       Defendant also argues that the FAC fails to allege facts constituting

"extreme emotional distress" -- the final element of IIED.  *See Rezentes v. Sears,

Roebuck & Co*, 2010 WL 1905011, at *7 (D. Haw. May 10, 2010) (indicating that

merely alleging "severe emotional distress" is a mere legal conclusion cast in the

form of a factual allegation under *Twombly*).

       The FAC, however, alleges not only that Defendant caused "severe

emotional distress to [Weaver]," FAC ¶ 96, but also that Weaver was left homeless, endured a situation that would cause obvious humiliation (*e.g.*, *id.* ¶ 68), and suffered marital strain.  *Id.* ¶ 72.  Assuming the truth of all the factual allegations in FAC, the court concludes that it sufficiently pleads a plausible claim for "severe emotional distress."  Plaintiffs' IIED claim has "facial plausibility" and the FAC sufficiently "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Dismiss Counts II and III of the First Amended Complaint is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 12, 2011.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Weaver et al. v. A-American Storage Mgmt. Co., et al.*, Civ. No. 10-00600 JMS-KSC, Order Denying Defendant A-American Storage Management Co., Inc.'s Motion to Dismiss Counts II and III of the First Amended Complaint